FILED
2014 Nov-24 AM 10:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| SHARON YVONNE FLUKER, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) Case No. 1:13-cv-01672-HGD |
| | ) |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) ) |
| | ) |
| Defendant | ) |

## MEMORANDUM OPINION

This matter is before the undersigned magistrate judge based on the consent of the parties pursuant to 28 U.S.C. § 636(c) and LR 73.2. Plaintiff, Sharon Fluker, protectively filed an application for Supplemental Security Income (SSI) benefits on July 28, 2011, alleging that she became unable to work on February 11, 2010. (Tr. 47, 185). Plaintiff reported her disabling conditions as high blood pressure, knee and wrist problems, and arthritis. (Tr. 224). A hearing was held before an administrative law judge (ALJ) on August 13, 2012. The hearing was continued to allow a Title II Disability Insurance Benefits (DIB) claim to be filed with a protective filing date of July 28, 2011, and alleged onset date of February 10, 2010, the day following a prior ALJ decision. (Tr.

102-06). However, no such petition was filed by the time of the ALJ's decision. (Tr. 25). A hearing was held on plaintiff's other claims on December 19, 2012. (Tr. 40).

On January 11, 2013, the ALJ issued a decision denying plaintiff's application (Tr. 25-35), and the Appeals Council denied plaintiff's request for review. (Tr. 1-3). This case is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

### I.  ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id*. Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ first must determine the claimant's residual functional capacity (RFC), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work, 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence in significant numbers of jobs in the national economy that the claimant can do given the RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(g) and 404.1560(c).

The ALJ found, after the hearing, that plaintiff has the following severe impairments: arthritis, hypertension, and obesity. (Tr. 27). According to the ALJ, the plaintiff does not have an impairment or combination of impairments that meets or

medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 27).

The ALJ concluded that plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), except that due to the history of "scoped" knees and arthritis, she would be limited to lifting ten pounds frequently and 20 pounds occasionally. The ALJ found that plaintiff had a good range of motion with other joints and hands for fine and gross manipulation. She would be able to stand and/or walk for four to six hours and she could sit for six to eight hours. She has no problems interfacing with other people. (Tr. 28).

According to the ALJ, plaintiff has past relevant work as a poultry hanger, poultry hand and catcher, and jack pallet driver. She determined that plaintiff is unable to perform any past relevant work. Nonetheless, a vocational expert (VE) testified that, considering all of plaintiff's limitations, she still would be able to perform the requirements of representative occupations such as vacuum form operators, molding machine tenders, and stamping machine tenders. The VE testified that there were substantial number of such jobs in Alabama and the nation. In arriving at his determination, the VE did factor in a sit/stand option for plaintiff. (Tr. 34).

Based on the testimony of the VE and the other record evidence, the ALJ concluded that plaintiff was "not disabled." (Tr. 34).

## II.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, re-evaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court

acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Evidence Considered by the ALJ

The ALJ considered testimony by plaintiff concerning her condition at the hearing. Plaintiff testified that she was 46 years old with a high school education. Plaintiff testified that she had been unable to work since 2005 due to knee pain and pain in her fingers. She testified that her knee swells and that she has torn ligaments and damaged nerves in her knees. She has been told that she needs a total knee replacement. Plaintiff stated that she takes medication for pain twice daily. She testified that this medication makes her drowsy and that she has to lie down and sleep for two hours. She also claimed that she has arthritis in her fingers and swollen knuckles. The joints in both her hands cramp up and cause her considerable pain. She stated that she took Tylenol Arthritis as instructed for the joints in her hands, but it did not help. Plaintiff testified that she could stand for ten minutes before her knees and ankles start to swell, walk for ten minutes, and could not lift over ten pounds. She stated that she spent her day alternating between lying down and sitting due to constant pain. She testified that she did not do any cleaning, but she did wash dishes, do laundry, and occasionally cooked. She also watched television, read and just sat. According to plaintiff, she hurt the most at night and that her pain averaged a level 8 out of 10 on a daily basis. (Tr. 29).

The ALJ also cited medical records which reflect that plaintiff has complained of bilateral knee pain since at least March 2001. X-rays of her left knee indicated minimal medical compartment joint space loss. X-rays of the right knee indicated minimal hypertrophic degenerative changes. On October 29, 2004, x-rays indicated tricompartment degenerative changes of the knee but no acute skeletal abnormality. An MRI indicated no internal derangement but tricompartment degenerative change of the left knee, and possible sprain of the medial collateral ligament with possible mild intra-substance tear of the medial meniscus. Her hypertension was noted as being under better control. In a follow-up with her treating physician in August 2005, chart notes indicate she was "actually doing well."

Records also reflected that, on September 20, 2005, plaintiff went to an emergency room complaining of right knee pain. On October 25, 2005, an MRI indicated moderate chondromalacia[1] of the lateral component of the right knee, maceration, and lateral patellar pressure syndrome. On November 2, 2005, plaintiff underwent a diagnostic arthoscopy of the right knee, by Dr. Karl Hofammann, with debridement shaving, excision, and removal of chondral loose bodies. The post-operative diagnoses were suspected internal derangement of the right knee and obesity. A follow-

---

[1]Chondromalacia is a term used to describe damage or softening of the articular cartilage on the underside of the kneecap. (http://sportsmedicine.about.com ).

up on November 9, 2005, noted that plaintiff was in the process of developing osteoarthritis in her knee. She was instructed on the need to control her weight as much as possible, noting that in the future she would require knee replacement. On December 12, 2005, plaintiff returned to the doctor with reports of continued pain which was determined to be due in part to degenerative arthritis and plaintiff's weight. (Tr. 29).

Plaintiff returned to her regular practitioner on March 31, 2006, for help with her morbid obesity. She was prescribed Xenical with instructions to return in one month. She did not return until November 2006. Her hypertension was noted as being under good control with current medications. Xenical was again prescribed for her obesity. (Tr. 29-30).

On May 22, 2006, Dr. Hofammann, an orthopedist, opined that plaintiff's knee was not bad enough to require knee replacement, although she should be on sedentary duty without prolonged walking or standing. (Tr. 264).

On February 12, 2007, Dr. James J. Matic, M.D., consultatively examined plaintiff at the request of the State agency. He noted her history of knee pain with the eventual need for knee replacements. Plaintiff was 5'5" in height and weighed 245 pounds. She had a full range of motion in the cervical and lumbar spine, although there was some moderate pain in the lumbar spine. She also had a full range of motion in all joints in the upper extremities with a 4/5 grip strength. The lower extremities were without swelling,

had no ligamentous laxity, and normal range of motion. Plaintiff's gait was slow with a mild limp on the right knee and she could squat halfway down. The diagnosis was degenerative joint disease of both knees, hypertension and obesity. (Tr. 292).

Plaintiff's records are then silent for over four years. On February 25, 2011, plaintiff visited Dr. Chona Huang, M.D., complaining of right knee pain and hand pain. Her hypertension was noted as being under control. She was advised to lose weight. Plaintiff was instructed to return for lab work, but she did not do so. (Tr. 30).

On September 1, 2011, plaintiff was examined at Quality of Life for treatment of hypertension. Her blood pressure was noted to be stable at 131/76. She weighed 233 pounds and was negative for gait disturbance, bone/joint symptoms, and muscle weakness. Upon examination, she had normal musculature, no joint deformities or abnormalities, and normal range of motion of all extremities. (Tr. 30).

The ALJ also noted that plaintiff was consultatively examined by Dr. Ammar Saem Aldaher, M.D., at the request of the State agency. She complained of hypertension and right knee pain. Upon examination, her blood pressure was 143/75 and she weighed 235 pounds. No edema, clubbing or cyanosis were observed. She also had a normal range of motion in the upper and lower extremities, normal gait and used no assistive device. She also was found to have no ataxia, spacsticity or muscle weakness. The physician noted normal sensation, reflexes and grip, and no apparent muscle atrophy. X-rays of the right

knee did reflect degenerative and hypertrophic changes. Dr. Aldaher opined that plaintiff could do work-related activities such as sitting, standing, walking, lifting, carrying and handling. (Tr. 30).

Plaintiff returned for a follow-up appointment on December 20, 2011, with an additional complaint of bilateral knee pain. Her weight was 239 pounds. She had joint tenderness and decreased mobility, but still had a normal range of motion, muscle strength and stability with no pain on inspection. Plaintiff returned again on June 20, 2012, stating that her pain was worsening. However, upon examination, she was found to be negative for crepitus, decreased mobility, joint instability, joint locking, limping, popping, spasms or weakness. She continued to have normal range of motion, muscle strength and stability in all extremities with no pain on inspection. (Tr. 31).

After consideration of all the evidence, the ALJ noted that plaintiff has been formally diagnosed with obesity. The ALJ evaluated her obesity in conformity with Social Security Ruling 02-1p, which requires an assessment of the effect of a claimant's obesity on her ability to perform routine movement and necessary physical activity within the work environment. While noting that her obesity affects her ability to perform some of the physical requirements of work and likely contributes to her complaints of hypertension, knee pain and difficulty stooping, the ALJ found no evidence that her obesity precludes plaintiff from performing work at the light, or even the sedentary, level

of exertion, as these levels of work activity would minimize the effect of her obesity on her joints and body systems. (Tr. 31).

The ALJ also addressed plaintiff's degenerative joint disease and bilateral knee pain, concluding that the limiting effects were not as severe as claimed by plaintiff. According to the ALJ, the evidence of record reflects that plaintiff had a torn meniscus and that she underwent an arthroscopic procedure resulting in some debridement of the area. Those records also reflect that she was advised to lose weight because otherwise it would continue to exacerbate her knee problems. The ALJ noted that the most recent medical records reflect that plaintiff weighs 202 pounds with a body mass index of 36.94.

Plaintiff also testified that the arthritis affects her right knee and her hands, particularly at night. The ALJ referenced the consultative examinations of Dr. Aldaher and Dr. Matic, both of whom indicate that plaintiff could perform at least light work with a sit/stand option. The ALJ also noted that the treatment notes of plaintiff's treating physicians also indicate that she has a normal range of motion, normal muscle strength, and stability in all extremities, with no pain on inspection. (Tr. 31, citing Exs. B9F, B10F & B11F).

The ALJ concluded that, giving plaintiff every benefit of the doubt with regard to her right knee pain, plaintiff could function at a restricted range of work at the light level of exertion with a sit/stand option or the sedentary level of exertion. (Tr. 31).

The ALJ found that there was insufficient evidence to support plaintiff's claims of arthritis pain in both hands with knuckle and hand swelling, which she alleges result in the inability to do fine finger manipulation. According to the ALJ, both Dr. Aldaher and Dr. Matic noted that plaintiff has muscle strength of 4/5 with good fine and gross motor skills. Furthermore, plaintiff made no complaints of swelling or difficulties with fine or gross manipulation that was noted by doctors at Quality of Life.

The ALJ also stated that, while plaintiff has a diagnosis of hypertension, the medical records indicate that the hypertension is well-controlled with medication. Furthermore, there is no indication that plaintiff has been non-compliant with her medication or has had any difficulty maintaining her blood pressure levels. (Tr. 32).

The ALJ gave significant weight to the opinions of the consultative examining physicians, Dr. Matic and Dr. Aldaher. Both based their opinions on the examination of plaintiff, in addition to a review of the medical evidence of record. Both physicians noted that plaintiff had a good range of motion. Furthermore, Dr. Aldaher reviewed x-rays that indicated degenerative changes to plaintiff's knee, but did not report that she had

any disabling impairment or pain due to any impairment singly or in combination. The ALJ noted that these findings are consistent with the overall evidence of record. (Tr. 32).

Less weight was given to the opinion of reviewing physician, Dr. Robert Heilpern, M.D. (*See* Ex. B8F). While Dr. Heilpern noted that plaintiff had a full range of motion and normal gait when examined by Dr. Aldaher, Dr. Heilpern stated that plaintiff could lift 50 pounds occasionally and 25 pounds frequently. However, Dr. Heilpern did not have access to the testimony of plaintiff with regard to the arthritis in her hands that would indicate that such weight was excessive. Therefore, lesser weight was given to his opinion. (Tr. 32).

The ALJ reviewed plaintiff's past relevant work and concluded that she is unable to perform this work. (Tr. 33). The ALJ found that plaintiff had the residual functional capacity to perform light work with certain limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the ALJ consulted with a vocational expert. The ALJ asked the VE a hypothetical question regarding someone of plaintiff's age and education and who has "had a history of having her knee scoped, and arthritis, and had has bilateral arthritic knees – or simply [phonetic] degenerative joint disease in those knees and hypertension." (Tr. 64). Furthermore, she indicated that this individual "has a good range of motion of the other joints and hands with a grip strength of four over five in each hand, with fine and gross manipulations" and "would be limited

to lifting 10 pounds frequently, occasionally 20." (Tr. 64). This individual would have no problems with socialization, would have the ability to walk limited to four to six hours and the ability to sit for six to eight hours. The individual would need to be able to sit/stand if necessary. (Tr. 64-65).

The VE testified that, with these limitations, a person would be able to perform jobs such as vacuum form operator, molding machine tender and stamping machine tender, which are light, unskilled jobs which exist in significant numbers in the state and national economies. The ALJ further noted that there may be occasions when the arthritis is exacerbated due to joint tenderness, numbness and swelling such that only sedentary work would be available. In this alternative, the VE testified that sedentary work such as semiconductor bonder, parts screener and insulation worker were available to plaintiff and were available in significant numbers in Alabama and the national economy. Based on this, the ALJ found that plaintiff was "not disabled." (Tr. 34).

## IV.     Plaintiff's Arguments for Reversal

Plaintiff asserts that the ALJ's RFC findings are not based on substantial evidence and that she failed to properly develop the record.

## V.     Discussion

Plaintiff contends that the RFC findings of the ALJ are "internally inconsistent" because the ALJ referred to both the sedentary and light levels of exertion. A fair

reading of the ALJ's decision reflects that there is no inconsistency. The ALJ found that plaintiff retained the RFC to perform a range of light work. The regulations explain that the ability to perform light work includes the ability to perform sedentary work. *See* 20 C.F.R. Pt. 404, Subp. P, App. 2, § 202.0(a) ("The functional capacity to perform a full range of light work includes the functional capacity to perform sedentary as well as light work."). *See also* SSR 83-10, 1983 WL 31251, at *2 ("RFC generally represents an exertional work capability for all work at any functional level(s) below that used in the table under consideration."). Because there are no other additional limiting factors that would prevent plaintiff from working at the light level of exertion, plaintiff can perform both light and sedentary work. Therefore, there is no inconsistency.

In any event, the ALJ asked the VE to also consider that there may be occasions when plaintiff could only work at the sedentary level when her arthritis was exacerbated. The VE testified that, even if limited to sedentary work, there were jobs which a person with plaintiff's limitations could perform in the national economy.

Plaintiff also states that the ALJ's RFC determination is inconsistent because it refers to a sit/stand option, but the RFC finding did not allow for a sit/stand option. Although the ALJ did not specifically find that plaintiff's RFC included the need for a sit/stand option, at the hearing, she asked the VE whether there would be other jobs available for someone with plaintiff's limitations, including being able to stand and/or

walk for four to six hours, sit for eight hours and alternate between sitting and standing. The VE testified that such an individual could perform the work of a vacuum operator, molding machine tender and stamping machine tender. (Tr. 64-65). The VE testified that there were over 200,000 of these positions in existence in the national economy. (Tr. 65). Thus, even if the ALJ had included a sit/stand option, it is clear that there are jobs in the economy that plaintiff could fill. Consequently, this would not change the outcome of the case. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (ALJ's erroneous factual findings were harmless when they did not impact the ultimate finding that the claimant was not disabled).

Plaintiff also contends that the ALJ did not properly consider her obesity. However, this is simply not so. The ALJ found that plaintiff's obesity was a severe impairment and discussed the Social Security Ruling regarding obesity, as well as the medical evidence addressing plaintiff's obesity, including the treatment notes and opinions from various medical sources such as Dr. Hofommann, Dr. Davis, Dr. Matic, Dr. Huang, Quality of Life Health Services, and Dr. Aldaher. (Tr. 29-31).

Plaintiff did not cite any medical evidence in support of her claim that her obesity led to greater functional limitations than those found by the ALJ. The SSA has acknowledged that "[o]besity can cause limitation of function . . . in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing and pulling." 67

*Fed. Reg.* 57859 (Sept. 12, 2002). Accordingly, under SSR 02-1p, an RFC assessment should take account "of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." *Id.*

Contrary to plaintiff's argument, her obesity was properly considered in her RFC. It was the conclusion of the ALJ that her obesity is "severe," but not symptomatic enough to qualify her for disability. Substantial evidence supports this conclusion. In fact, according to the latest medical records, plaintiff had reduced her weight from 245 pounds to 202 pounds and was taking medication designed to help her control her weight. The ALJ found that, despite her obesity, plaintiff (1) had the RFC to lift ten pounds frequently and 20 pounds occasionally, (2) had a good range of motion with other joints and hands for fine and gross manipulation, and (3) would be able to stand and/or walk for four to six hours and sit for six to eight hours. Repeated medical examinations reflected that, despite her complaints, plaintiff had a normal range of motion, muscle strength, and stability in all extremities with no pain on inspection. (Tr. 319). Thus, the findings of the ALJ are based on substantial evidence.

Plaintiff also contends that the ALJ failed to properly develop the record. Plaintiff contends that the ALJ should have ordered an additional consultative examination. Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits. The ALJ has a duty

to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the ALJ to make an informed decision. *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) (citation omitted).

The record contains ample evidence, including the opinions of two consultative examining physicians, as well as treatment notes for plaintiff's treating sources, from which the ALJ could determine plaintiff's RFC and that she was not "disabled" under the Social Security Act.

Plaintiff complains that there was no RFC by an examining physician in a format compliant with SSR 96-8p. However, the Commissioner's regulations specifically place the responsibility for determining RFC with the ALJ, based on all the evidence in the record. *See* 20 C.F.R. §§ 416.927(e)(2), 416.945(a)(3), 416.946(c); SSR 96-5p; *Shaw v. Astrue*, 392 Fed. Appx. 684, 697 (11th Cir. 2010). The medical problems suffered by plaintiff are not so complicated that any further review by a medical professional was necessary. *Castle v. Colvin*, 557 Fed. Appx. 849 (11th Cir. 2014). The ALJ did not need a physician's opinion regarding plaintiff's functional limitations before assessing her RFC. There was substantial evidence in the record upon which the ALJ could base her determination of plaintiff's condition. Accordingly, the ALJ found that plaintiff was not disabled.

## VI.    Conclusion

There was substantial evidence that plaintiff could perform unskilled work with the significant limitations as set out in plaintiff's RFC. The ALJ provided a detailed and adequate reason for her findings. Accordingly, upon review of the administrative record, and considering all of plaintiff's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. Therefore, that decision is due to be affirmed. A separate order will be entered.

DONE this 24th day of November, 2014.

_____
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE